JUDGE OETKEN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 12 CIV 0687

-------------------------------------------------------------------------- x

JOAN MAZUR,

                                 Plaintiff,

                 -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION, and REGINA DOMINGUEZ,

                            Defendants.

-------------------------------------------------------------------------- x

**NOTICE OF REMOVAL**

Case No. 12 Civ. _____

JAN 27 2012
U.S.D.C. S.D. N.Y.
CASHIERS

**TO:  THE UNITED STATES DISTRICT COURT,
      SOUTHERN DISTRICT OF NEW YORK**

        Defendant the New York City Department of Education,[1] by their attorney, Michael A. Cardozo, Corporation Counsel of the City of New York, respectfully shows this Court as follows:

        1.     On January 12, 2012, Defendant the New York City Department of Education was served with a copy of the Summons and Complaint in the above-entitled action, pending in the Supreme Court of the State of New York, County of New York, Index No. 100398/12. A copy of the Complaint, dated January 11, 2012, is annexed hereto as Exhibit "A."

        2.     The above-captioned case is a civil action of which the District Court has original jurisdiction in that it includes a cause of action which arises under the Constitution and laws of the United States, pursuant to 28 U.S.C. § 1331. This action is therefore removable to the District Court without regard to the citizenship or residence of the parties, pursuant to 28 U.S.C. § 1441(a).

---

[1] As of the filing of this document Regina Dominguez, has not yet been served a copy of the Summons and Complaint in this action.

3.      Plaintiff brings this lawsuit claiming, *inter alia*, that defendants subjected plaintiff to discrimination on the basis of her age, and disability in violation of the Equal Protection Clause of the United States Constitution, pursuant to 42 U.S.C. §1983, and the New York State and City Human Rights law.  See Exhibit "A" ¶¶ "4, 49, and 50."

4.      This Notice of Removal is timely because it is being filed within thirty (30) days of receipt of the initial pleading.  See 28 U.S.C. § 1446(b).

5.      A copy of the Declaration of Regina Dominguez, dated January 26, 2012, is annexed hereto as Exhibit "B," and Ms. Dominguez consents to the removal of the case to the United States District Court for the Southern District of New York.

6.      Defendants will promptly file a copy of this Notice of Removal with the Clerk of the state court in which the action has been pending.

7.      Defendants are unaware of any previous application for the relief requested herein.

**WHEREFORE** defendants respectfully request that the above-captioned action be removed from the Supreme Court of the State of New York, County of New York, to the United States District Court for the Southern District of New York.

Dated:     New York, New York
              January 26, 2012

                             MICHAEL A. CARDOZO
                             Corporation Counsel of the
                              City of New York
                             Attorney for Defendants
                             100 Church Street, Room 2-141
                             New York, New York 10007-2601
                             (212) 788-8699

By:                  _____
                             Amy J. Kessler
                             Assistant Corporation Counsel

TO:     THE LAW OFFICE OF STEVEN A. MORELLI, P.C.
          Steven A. Morelli
          Eric S. Tilton
          Attorney(s) for the Plaintiff
          1461 Franklin Avenue
          Garden City, New York 11530
          (516)393-9551

# EXHIBIT A

2012-002479

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------x
                                                                    Index No. 12/100398
JOAN MAZUR,                                                          Date Filed: 1/12/12

                                        Plaintiff,

                                                                    **SUMMONS**

NEW YORK CITY DEPARTMENT                                             Plaintiff designates
OF EDUCATION, and REGINA DOMINGUEZ                                   **County of New York** as the
                                                                    place for trial based upon the
                                                                    residence of the Defendants

                                        Defendants.
-------------------------------------------------------------------------x

To the above named defendants:

    **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve
a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons,
exclusive of the day of service (or within 30 days after the service is complete if this summons is
not personally delivered to you within the State of New York); and in case of your failure to
appear or to answer, judgment will be taken against you by default for the relief demanded in the
complaint.

Dated: Garden City, New York
      January 11, 2012

                    THE LAW OFFICE OF
                    STEVEN A MORELLI, P.C.

                    Steven A. Morelli
                    Eric S. Tilton
                    Attorney(s) for Plaintiff
                    1461 Franklin Avenue
                    Garden City, New York 11530
                    (516) 393-9551

TO:    New York City Department of Education
       52 Chambers Street
       New York, N.Y. 10007

       Regina Dominguez
       52 Chambers Street
       New York, N.Y. 10007

NEW YORK
COUNTY CLERK'S OFFICE

JAN 12 2012

NOT COMPARED
WITH COPY FILE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------X          Index No.:
JOAN MAZUR,

                         Plaintiff,                                   **COMPLAINT**

        - against -

NEW YORK CITY DEPARTMENT
OF EDUCATION and REGINA DOMINGUEZ,

                         Defendants.
-----------------------------------------------------------X

        Plaintiff JOAN MAZUR, by and through her attorneys, The Law Office of Steven

A. Morelli, P.C., respectfully alleges, upon knowledge as to herself and her own actions

and upon information and belief as to all other matters, as follows:

                        **PRELIMINARY STATEMENT**

1.      Joan Mazur, an experienced English as a Second Language (ESL) teacher at

        Grover Cleveland High School, has been subject to unfair and discriminatory

        discipline and harassment over the past three years.

2.      Since she suffered an injury that required her to be out of work for six weeks, Ms.

        Mazur has been subject to ever increasing criticism and disciplinary actions from

        her assistant principal, Regina Dominguez.  Ms. Dominguez has subjected Ms.

        Mazur to biased observations and evaluations and required her, against union

        contract, to submit onerous weekly lesson plans.

3.      Despite her experienced and diligent teaching, Grover Cleveland High School has

        unfairly given Ms. Mazur negative evaluations which threaten her license to teach

        in New York City.

4.      As more fully set forth below, Defendant discriminated against Plaintiff on the

                                            1

basis of her age and disability in violation of the Equal Protection Clause of the United States Constitution pursuant to 42 U.S.C. § 1983, New York State Executive Law §§ 290 et seq., and Title 8 of the New York City Administrative Code.

## PARTIES

5.  Plaintiff JOAN MAZUR is a 49-year-old Jewish Caucasian female and a resident of Nassau County, New York.  At all times relevant to this complaint, Plaintiff was an "employee" of the New York City Department of Education as that term is defined by the New York State Executive Law § 290 et seq., and Title 8 of the New York City Administrative Code.

6.  Defendant NEW YORK CITY DEPARTMENT OF EDUCATION is a municipal corporation incorporated under the laws of the State of New York, which is in charge of all public schools in the City of New York, including terms and conditions of employment for all teachers, principals, superintendents, clerks, and other employees of the Department of Education. Its headquarters is located at 52 Chambers Street, New York, New York 10007. At all times relevant to this complaint, Defendant was an "employer" as that term is defined by New York State Executive Law § 290 et seq., and Title 8 of the New York City Administrative Code.

7.  Defendant REGINA DOMINGUEZ is the assistant principal for foreign languages and ESL at Grover Cleveland High School. As such, she had supervisor control over the day-to-day activities of the Plaintiff and, as such, was Plaintiff's

"employer" as that term is defined by New York State Executive Law § 290 et seq., and Title 8 of the New York City Administrative Code.

## FACTUAL ALLEGATIONS

8.    Ms. Mazur is a diligent and well-regarded teacher with experience in New York City public schools since 1988.  From 1988 to 1994, she worked as a teacher in the public school system, and then from 1994 to 2003 she worked outside the system as an adjunct professor, child welfare caseworker, and educational director at nursery schools.

9.    In October 2003, she started teaching as an English as a Second Language (ESL) teacher at Grover Cleveland High School, located at 21-27 Himrod Street, Queens, NY 11385, where she currently works.  From 2004-05, she taught at Far Rockaway High School, but was then excessed and returned to Grover Cleveland High School in the fall of 2005.

10.   Her direct supervisor is Regina Dominguez, assistant principal for foreign languages and ESL at Grover Cleveland High School.

11.   From 2003 to 2007, Ms. Mazur received only satisfactory ratings on her observations and end-of-year evaluations.  She frequently helped to coordinate extracurricular activities and performances, for which she received multiple letters of commendation from her supervisors.  She does not recall being mistreated by the administration during this time.

12.   This all changed in February 2008, after Ms. Mazur badly sprained her ankle over the winter school break.  Her right ankle was badly swollen and she was in a wheelchair or on crutches, making it impossible to drive or to take public

transportation to her school.   She required six weeks to recuperate before returning to work. As a result of her injury, Ms. Mazur was a qualified individual with a disability as that term is defined by New York State Executive Law § 290 et seq., and Title 8 of the New York City Administrative Code.

13.    During Ms. Mazur's time away from school, Ms. Dominguez frequently called her to harass her over the telephone.   Ms. Dominguez called several times to complain about textbooks that Ms. Mazur had already prepared for distribution and just needed to be handed out.   Ms. Dominguez called Ms. Mazur about four times the last week of February 2008 to tell Ms. Mazur that the textbooks should have been given out by the previous Thursday. Ms. Mazur explained that as it was Valentine's day, about 50% of her students were absent, and the next day, Friday, about 75% of her students were absent, so she used her discretion and decided to wait until everyone had returned from vacation to distribute the books. Ms. Dominguez told Ms. Mazur that she was not to use her discretion. Ms. Dominguez also called Ms. Mazur to berate her about not finding a replacement substitute teacher for herself.

14.    In September 2009, Ms. Dominguez was in Ms. Mazur's room and asked Ms. Mazur if she had yet distributed the books for that semester.   When Ms. Mazur had replied that indeed she had, Ms. Dominguez asked her if she thought it was really wise to have given out the books that day, since the attendance had been so low, and that probably it would have been better to wait until all the students were present.   This was the same decision about which Ms. Dominguez berated Ms. Mazur a year-and-one-half earlier.

4

15.  After Ms. Mazur returned to teaching in April 2008, she began noticing that Ms. Dominguez's attitude towards her was no longer friendly as before, but was becoming more and more negative over time.

16.  In June 2008, Ms. Mazur was observed by Ms. Dominguez, who gave her a "minimally satisfactory" rating, the first time Ms. Mazur had received anything other than a "satisfactory" rating. Ms. Dominguez's report was unfairly critical, picking on minor issues in Ms. Mazur's teaching that she had never criticized before.

17.  Ms. Mazur believes that Ms. Dominguez wanted to give her an "unsatisfactory" rating at the time, but could not because it was already June and without prior observations for that academic year, there was not enough time to develop the necessary "paper trail" to give Ms. Mazur an "unsatisfactory" rating. Ratings of "minimally satisfactory" are normally a tactic used by supervision to alarm and upset a teacher to whom an "unsatisfactory" rating cannot be assigned.

18.  In December 2008, Ms. Dominguez performed an observation without notifying Ms. Mazur beforehand, when for all previous observations she had  either asked for a mutually agreed upon time or, at the very least, let Ms. Mazur know exactly the date and period that she would be observing her class. At the start of the lesson, for the very first time ever, Ms. Dominguez refused to take the hand-out for that class from Ms. Mazur. This suggested to Ms. Mazur that Ms. Dominguez had already decided what rating she was going to give regardless of what happened during that class. Hence, Ms. Mazur was not surprised when she received her first ever unsatisfactory rating for the observation.

19.    Ms. Mazur, along with a written rebuttal to that unsatisfactory observation, included 14 book receipts, dated September 2008, showing that she had indeed distributed books to that class.  In that rebuttal, Ms. Mazur also pointed out that she had been chosen to tutor students eight semesters in a row as an administrative assignment, rather than stamping books, answering the phone, or arranging the bookroom, like other teachers have been assigned. Tutoring is not generally an assignment that is given to unsatisfactory teachers.

20.    In her post-observation report, Ms. Dominguez criticized Ms. Mazur for minor issues, especially for not writing the homework assignment at the start of the class and not forcing students to work in pairs.  She ordered Ms. Mazur to observe two other teachers who were supposed to be models for dealing with these two alleged problems.  These teachers, Evelyn Mosquea and Maria Razos, are both 15 years younger than Ms. Mazur.  But when Ms. Mazur dutifully observed these teachers, she found they acted exactly the same as she did - one teacher gave out the homework as the dismissal bell was ringing, and the other told the students it was their choice to either work in pairs or independently. However, these teachers were not reprimanded by Ms. Dominguez for their actions, and were in fact lauded as model teachers.

21.    Despite these negative observations, Ms. Mazur received a satisfactory rating on her year-end evaluation in 2009.

22.    During the 2009-10 school year, Ms. Dominguez observed Ms. Mazur twice and gave her two satisfactory observations.  Upon information and belief, the reason that Ms. Dominguez did not punish or take further action against Ms. Mazur at the

time was because her "attention" was focused on another ESL teacher, Michaela Lucey, who unfairly received unsatisfactory observations that year and was terminated because she had not yet achieved tenure.

23.     In or around May 2010, Principal Dominick Scarola of Grover Cleveland High School, who was embattled in personal scandals, decided to target Ms. Mazur with an investigation into her attendance record.  He sent a letter to the New York City Department of Education's Office of Labor Relations stating that Ms. Mazur had been absent 75 days over the past four years.  The Department of Education responded to Mr. Scarola's letter by levying "3020-A" charges against Ms. Mazur for her absences.

24.     While Ms. Mazur admits being absent for a total of 75 days, 55 days were due to illnesses such as her sprained ankle for which she had valid doctor's letters explaining her absences.  The remaining 20 days were taken out of her personal leave, and five absent days per year over four years was not excessive compared to other teachers in her school.

25.     In June 2010, Ms. Mazur was surprised to find that she had received an overall "Unsatisfactory" rating in her year-end evaluation, based on an unsatisfactory rating in the attendance category, the only category out of 23 in which she had received an unsatisfactory rating.  Ms. Mazur is not aware of any other teachers who have received an overall unsatisfactory rating based on an unsatisfactory rating in a single category, nor is she aware of any other teachers who have had their attendance records scrutinized like hers was.

26.     In October 2010, she went to an arbitrator for the Department of Education, Arthur A. Riegel, over these charges. Mr. Riegel unfairly decided against her and wrote a final report that had inaccuracies on which days she was late or absent. He failed to look at facts and documentation, and ignored evidence brought to the hearing by Ms.  Mazur. The attorney assigned to Ms. Mazur, Melinda Gordon, provided a disturbing piece of information, telling her that there is "never" a decision in which the teacher does not have to pay a fine, however small it may be, and that $1,000 was the minimum ever imposed on a teacher. Ms. Gordon explained that the 3020-A cases are never in favor of the teacher. The arbitrator fined Ms. Mazur $2,500, a large amount that is usually reserved only for serious offenses and certainly not for tardiness or absences which were covered by doctors' notes.

27.     On September 30, 2010, Ms. Mazur was observed by Ms. Dominguez and the heads of the English and Mathematics Departments, Michelle Robertson, and Celia Foster, respectively.  She received an unsatisfactory observation based once again on trivial or non-existent problems in her teaching.  These included blaming her for 11 students out of 26 being present in her class, when 13 of these students were only assigned to her class that same day and in fact were not even aware that they had been placed in her class.

28.     Ms. Dominguez also berated Ms. Mazur for using a grammar lesson from a supplemental book.  Ms. Mazur tried to point out that the book was indeed the correct level for the class, and since she had only 9 of the readers available for the 11 students who attended that day, upon seeing the three chairwomen walk in, she

made a decision to use her back up lesson, so that she would have enough materials for everyone to look at and use. Ms. Dominguez told Ms. Mazur that she would need prior permission to use a different book for the day, or indeed, anytime she wanted to change a book or reader. Ms. Mazur pointed out that all her colleagues used whatever books they prefer, and that in previous semesters she had been directed to select which books she wanted to use for a particular class. Ms. Dominguez replied that everyone had to check with her if they wanted to use a particular book, and said that she was not the previous supervisor, and that whatever the previous supervisor had told Ms. Mazur to do had nothing to do with Ms. Dominguez. This directly contradicts what Ms. Dominguez would often say in meetings about finding supplemental materials and actually making up lessons and exercises for the students to use.

29.     The following semester, Ms. Mazur was teaching the exact same course as the teacher in the next room, Maria Arruda, and was told to observe that teacher, as she is held in high regard by Ms. Dominguez. Ms. Arruda is 13 years younger than Ms. Mazur. Ms. Mazur discovered that this teacher had decided to change not only the reader but also the grammar book, and drop both books down a level, since the students were having difficulty with the level 4 book. When Ms. Mazur asked this teacher if that was acceptable, since it was not acceptable for her, this teacher replied that a teacher can certainly change a book if the students are having trouble. Indeed, over the years, Ms. Mazur had observed many teachers deciding to use different books, and finally, in February of 2011, her former union representative pointed out that according to the union contract, teachers are indeed

permitted to select materials for their classes.  Ms. Dominguez must have known that this other teacher had changed books, because she has to approve all midterms and finals, and the material on those exams reflected the material in the level 3 books and not in the level 4 books that had been assigned to the class.

30.     In her post-observation conference, Ms. Dominguez ordered Ms. Mazur to give her detailed weekly lesson plans at the start of each week.  Complying with this order, Ms. Mazur for several months was forced to prepare packets of lesson plans ranging from 25 to 75 pages in length every week.  This was a highly onerous task that consumed much of her weekend and vacation time, which was against the teachers' union contract provisions regarding when work could be assigned to teachers.

31.     When she submitted the lessons plans, Ms. Dominguez would not even read them, but simply filed them away without comment or advice.  Ms. Mazur later found out that requiring the "ritualistic submission of lesson plans" was also against rules in the teachers' contract, a fact that her union representative ignored, as did all the representatives at the Queens union office.  This ruling, which Ms. Mazur located, dates back to 1990, and when she tried to point this out to union representative Brian Gavin, he would just remind her that if she were to be written up for insubordination, she could be fired.

32.     In February 2011, Ms. Dominguez requested Ms. Mazur to work on detailed lesson plans over her winter vacation time, again a violation of her contract.  Once again, Ms. Mazur consulted with the union rep, Brian Gavin, who told her that it sounded to him like she was being "set-up" for another "unsatisfactory" at the end

of the year, but that having gotten a "unsatisfactory" on her last lesson, if she did not work over the vacation, she risked a charge of "insubordination."

33.   Ms. Mazur decided that she was no longer going to comply, and retained an attorney to write a letter to Principal Scarola at the time stating her opposition to these illegal orders.

34.   This letter seemed to work temporarily in stopping Ms. Dominguez's harassment. In March 2011, at a meeting of Ms. Dominguez, Ms. Mazur, Celia Foster (representative for the assistant principals), and Ms. Mazur's union representative, Mr. Gavin, the parties came to an agreement wherein Ms. Mazur was only required to submit abbreviated lesson plans every week.   Ms. Mazur dutifully complied with these amended orders.

35.   In May 2011, Ms. Mazur received an observation from Ms. Dominguez with a satisfactory rating.

36.   In June 2011, however, Ms. Mazur was again surprised to receive an unsatisfactory rating in her year-end evaluation.   Once again, trivial problems were pointed out, even including issues drawn from her satisfactory observation in May 2011. Ms. Mazur is aware that a third unsatisfactory rating in another year-end evaluation could mean the revocation of her license to teach in New York City.

37.   Also, in June 2011, a day or two before the year-end evaluations were distributed, Ms. Dominguez requested that Ms. Mazur provide her with a parent outreach log of dates and times in which she had contacted the parents of her students.   The other teachers in the department were astonished, as none of them had been asked

to provide this outreach log. Ms. Mazur had to go to the program office to learn how to get a print-out of this list. Ms. Mazur was able to show Ms. Dominguez that, indeed, she had called about 24 parents over the course of the semester to report absences, cutting, and unacceptable behavior to try to involve the parents in their children's education. To date, Ms. Mazur is still the only teacher in her department who knows how to obtain a print-out of parental contacts, as not one other teacher in her department has been asked to do this.

38.   On September 22, 2011, Ms. Mazur was observed by Ms. Dominguez, who brought along with her a "talent coach," Mary Brouder, to observe.  They arrived 30 minutes late to her class, and the talent coach only observed for approximately 14 minutes before leaving.   Ms. Dominguez once again made frivolous complaints about Ms. Mazur's teaching.   These included not having enough "teacher-made materials" because Ms. Mazur was using photocopies from a textbook, when all of her colleagues were also doing the same but were not criticized for it.

39.   Ms. Dominguez also complained about Ms. Mazur handing out dictionaries five minutes after the children began working. Ms. Mazur was the only one who had done so, and was also the only one who had portfolios ready, with at least 10 assignments in them, while other ESL teachers had no portfolios. Ms. Mazur was informed by a few colleagues that they had not given the students dictionaries at all, had no portfolios, and had not given the students initial assessments. Ms. Dominguez criticized them for it, but did not give anyone else an "ineffective" rating. Ms. Mazur had given the students initial assessments and done all the

things required, yet she received an "ineffective" rating (a new classification for "unsatisfactory") for this observation.

40.    Soon after this observation, Ms. Mazur received a union newsletter which said that administrators were bringing in talent coaches only when they wanted to give unsatisfactory ratings on observations.   This is because the talent coaches are "trained" to find problems in otherwise acceptable teaching and to give "Ineffective" ratings.   Ms. Mazur is not aware of any other teachers in her department who had a talent coach appear at their observations.   Also, every other teacher in her department was informed of when their observation would be beforehand, while Ms. Mazur was not given any advance notice whatsoever.

41.    Once again, Ms. Dominguez is currently demanding lesson plans from Ms. Mazur due to the "ineffective" rating on her last observation.   Ms. Mazur has consulted her union representatives about this. Union representative Mr. Gavin told her that since she got an "ineffective," she would have to submit lesson plans or risk being written up for insubordination.   After placing numerous phone calls to the Queens union office, the borough representative James Vasquez finally called Ms. Mazur back, and concurred that she did not have to turn in weekly lesson plans.   He informed her that she only had to submit a lesson plan once after an "unsatisfactory" observation, and that it should be reviewed with the supervisor in detail.

42.    On November 30, 2011, Ms. Mazur was again observed by Ms. Dominguez and the history chairperson, Ms. Dorene Lorenzoni.   Once again, at least four of Ms. Mazur's colleagues told her that they had known exactly which day and period

Ms. Dominguez was going to observe them for this latest round of observations. Ms. Mazur was not informed beforehand.

43.   Ms. Dominguez told Ms. Mazur that her observation would have again been rated as "ineffective," except that Ms. Mazur accidently tripped and fell down during the class, and Ms. Dominguez wanted to accommodate her for her loss of composure by not giving her a rating. However, Ms. Mazur believes that the real reasons for Ms. Dominguez not submitting a rating are that another assistant principal was observing and had complimented her on the lesson.

44.   Ms. Mazur was again observed on December 7, 2011, by Ms. Dominguez and the talent coach Ms. Brouder. Once again, Ms. Mazur's colleagues had prior warning, but she did not. On December 13, Ms. Mazur was told in a post-observation that her lesson was "ineffective," because allegedly she had spent too much time writing on the board and accepted some one-word responses from students. However, other teachers who have received the same criticisms have received "effective" ratings. Ms. Dominguez refused to accept Ms. Mazur's explanation that many of her students were functionally illiterate or came from very different language backgrounds. Instead, Ms. Dominguez told her about what she did in her own Advanced Placement Spanish class, which is composed of completely different students from the type that Ms. Mazur teaches.

45.   On December 22, 2011, Ms. Dominguez gave Ms. Mazur a letter stating she would need to submit a week's worth of lesson plans on January 3, 2012. Because the school would be out for winter break starting on December 24, this only gave Ms. Mazur her 45-minute prep period on December 23 to write 12

14

complete lesson plans.  Effectively, Ms. Dominguez required Ms. Mazur to make these lesson plans over her vacation, which is against her teachers' contract.  This was a repeat of the same requirement for her to work during vacation a year ago

46.   Ms. Mazur ended up having to write an outline of the lesson plans over winter break.  However, Ms. Dominguez was not satisfied with these lesson plans, and required her to meet with the principal of the school on January 4, 2012.  There, Ms. Mazur's union representative failed to adequately represent her, stating that "in light of the new evaluation system, the contract basically goes out the window."

47.   Since 2008, the negative observations and year-end evaluations have specifically targeted Ms. Mazur and not the other ESL teachers, none of whom have received unsatisfactory ratings in their observations or year-end evaluations.  Almost all of the other teachers are significantly younger than Ms. Mazur.  This occurs despite the fact that Ms. Mazur has more experience teaching than any of the other ESL teachers, and indeed is the only one who has taught on a college level in addition to teaching high school.

48.   Over the course of the last three years, Ms. Mazur has suffered from severe emotional stress and anxiety from the unending harassment from Ms. Dominguez and other administrators.  She is currently seeking therapy to cope with the emotional damage caused by her caustic work environment.

## CLAIMS FOR RELIEF

49.   By reason of the foregoing, Plaintiff has been subjected to unlawful discrimination by Defendants on the basis of her age and disability in violation of

the Equal Protection Clause of the United States Constitution pursuant to 42 U.S.C. § 1983, New York State Executive Law § 290 et seq. and Title 8 of the New York City Administrative Code.

50.   Moreover, Defendant Dominguez has directly participated in, aided, abetted, incited, compelled and coerced the aforementioned discriminatory treatment, in violation of  the Equal Protection Clause of the United States Constitution pursuant to 42 U.S.C. § 1983, New York State Executive Law § 290 et seq. and Title 8 of the New York City Administrative Code.

**WHEREFORE**, Plaintiff demands judgment against Defendants for all compensatory, emotional, physical, and punitive damages (where applicable), injunctive relief, and any other damages permitted by law.  It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled.

Dated: Garden City, New York
        January 11, 2012

Yours, etc.

Steven A. Morelli
Erie S. Tilton

THE LAW OFFICE OF
STEVEN A. MORELLI, P.C.
1461 Franklin Avenue
Garden City, New York 11530
(516) 393-9151
F: (516) 280-7528

**EXHIBIT B**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

JOAN MAZUR,

                                 Plaintiff,

                -against-

NEW   YORK   CITY   DEPARTMENT   OF
EDUCATION, and REGINA DOMINGUEZ,

                             Defendants.

------------------------------------------------------------------------ x

**DECLARATION OF REGINA
DOMINGUEZ**

        **REGINA DOMINGUEZ** declares, pursuant to 28 U.S.C. § 1746 and subject to

the penalties of perjury, that the following is true and correct:

        1.     Upon information and belief, I have not been served a copy of the

Summons and Complaint filed in the New York County Supreme Court under Index No.

100398/12 where I have been named as a defendant.

        2.     I consent to this case being removed from New York County Supreme

Court to the United States District Court for the Southern District of New York.

Dated:        Queens, New York
                  January 26, 2012

                                                  **REGINA DOMINGUEZ**

12 CV

| |
|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK |

JOAN MAZUR,

                                                                Plaintiff,


                          -against-


NEW   YORK   CITY   DEPARTMENT   OF
EDUCATION, and REGINA DOMINGUEZ,

                                                              Defendants.

---

**NOTICE OF REMOVAL**

---

**MICHAEL A. CARDOZO**
*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-141
New York, New York 10007-2601


Of Counsel:  Amy J. Kessler
Tel:  (212) 788-8699


Our No. 2012-002479

---

*Due and timely service is hereby admitted.*

New York, N.Y.  ............................................., 2012

Signed: ...........................................................................

Attorney for ...................................................................